# IN THE COURT OF APPEALS OF IOWA

No. 17-2054
Filed February 21, 2018

**IN THE INTEREST OF A.G., N.G., and J.G.,**
**Minor Children,**

**N.G., Mother,**
     Appellant.
_____

     Appeal from the Iowa District Court for Story County, Stephen A. Owen, District Associate Judge.

     A mother appeals the juvenile court order severing her parental relationship with three of her four children. **AFFIRMED.**

     Shannon M. Leighty of Public Defender's Office, Nevada, for appellant mother.

     Thomas J. Miller, Attorney General, and Ana Dixit, Assistant Attorney General, for appellee State.

     Nicole S. Facio of Newbrough Law Firm, Ames, guardian ad litem for minor children.

     Considered by Doyle, P.J., and Tabor and McDonald, JJ.

**TABOR, Judge.**

This appeal involves three children: eight-year-old N.G., seven-year-old A.G., and four-year-old J.G. Their mother, Natasha, challenges the juvenile court's order terminating her parental rights. Natasha contends she could have resumed care of the children at the time of the termination hearing. She also complains the Iowa Department of Human Services (DHS) did not make reasonable efforts to return the children and allowed the foster family to hinder reunification goals. Finally, she alleges termination would be detrimental to the children because of their strong bond with her. Based on our independent review of the record,[1] we cannot accept Natasha's contentions. Because the State offered clear and convincing evidence in support of its petition to terminate Natasha's parental relationship with N.G., A.G., and J.G., we affirm the juvenile court's order.[2]

## I. Facts and Prior Proceedings

This child-welfare case opened in April 2016 when the DHS received a report of J.G., then age two, having been left outside unattended. Neighbors also recalled the children asking for food, and DHS investigators found insufficient groceries in Natasha's home. Natasha later acknowledged she was using

---

[1] We review termination-of-parental-rights proceedings de novo, which means examining both the facts and law and adjudicating anew those issues properly preserved and presented. *See In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). We are not bound by the juvenile court's factual findings, but we give them weight, especially when witness credibility is critical to the outcome. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). The State's proof must be clear and convincing, which means we see no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010) (quoting *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000)).

[2] The juvenile court declined the State's request to sever Natasha's parental relationship with fourteen-year-old D.I., who objected to the termination. The court did terminate the parental rights of fathers Joseph and Cesar, who are not parties to this appeal.

methamphetamine and marijuana at this time. Natasha consented to removal of her four children in May when she was jailed in Story County. The children's fathers lived out of state and were unable to provide care.

In August 2016, the juvenile court adjudicated the four siblings as children in need of assistance (CINA). The next month, the DHS filed a case plan that recommended Natasha comply with random drug screens and seek treatment for substance abuse and mental-health difficulties. Natasha revealed diagnoses of depression, anxiety, oppositional defiance disorder, and borderline bipolar disorder. The DHS plan also expected Natasha to participate in visitation with the children and cooperate with other family safety, risk, and permanency (FSRP) services. In September 2016, the court modified the case plan—adding a goal for Natasha to secure safe and stable housing for herself and the children.

Over the ensuing months, Natasha did not live up to the expectations in the case plan. She did not comply with recommended mental-health and substance-abuse services. She engaged in criminal activity, collecting convictions for theft, child endangerment, and driving while revoked. Her housing was not stable; she often stayed with friends in Ames but did not provide DHS with the address. Most significantly, Natasha missed forty-five percent of the twice-weekly visitations with her children.

In May 2017, a year into the CINA case, Natasha requested additional services in the form of funds to pay for the mental-health evaluation requested by the DHS. Those additional services were provided by the time of the permanency review hearing in mid-July 2017.

The State filed a petition to terminate parental rights in July 2017.  The court held a two-day hearing in October and November 2017.  On the first day of the hearing, Natasha came to court from the Story County jail because she had not completed required coursework in connection with her conviction for operating while intoxicated.  In early December 2017, the court issued its order terminating Natasha's parental relationship with N.G., A.G., and J.G. under Iowa Code section 232.116(1)(e) and (f) (2017).  Natasha appeals.

## II.  Mother's Legal Challenges

### A.  Statutory Basis for Termination of Parental Rights

Natasha argues the State did not offer sufficient evidence to satisfy either paragraph (e) or (f).  When, as here, the juvenile court terminates a parent's rights on more than one statutory ground, we may affirm the order on a single ground if it is supported by the record.  *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012).  The strongest basis for affirming in this case is paragraph (f), which requires the court to find the following circumstances: (1) the children are four years of age or older; (2) they have been adjudicated CINA under section 232.96; (3) they have been removed from the physical custody of their parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days; and (4) there is clear and convincing evidence that at the present time they cannot be returned to the parents' custody as provided in section 232.102.  Iowa Code § 232.116(1)(f).  Natasha attacks the evidence supporting the fourth element—that the children could not be returned at the time of the hearing.  *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010)

(interpreting the term "at the present time" to mean to mean "at the time of the termination hearing").

From purely a housing standpoint, Natasha could not have resumed care of the three children at the time of the hearing, given she was essentially homeless. She testified herself that if reunited with the children they "would probably start off at a shelter." From a more holistic viewpoint, Natasha was not ready to step back into the role of full-time parent. She was not employed at the time of the hearing. She had not taken timely steps to address her mental-health and substance-abuse issues. And she had missed nearly half of her twice weekly visits with the children. If resuming custody of her children had been Natasha's priority, she would have been more disciplined about confirming the visitation times and attending the sessions. Clear and convincing evidence supported the juvenile court's decision to terminate based on paragraph (f).

### B. Reasonable Efforts

Natasha argues the DHS did not satisfy its burden to make reasonable efforts to reunify her family after removing the children from her care. She focuses on the visitation offered by the DHS and a situation where the foster parents declined to allow the children unsupervised telephone contact with Natasha. The DHS is required to make every reasonable effort to return children to their home—consistent with their best interests. Iowa Code § 232.102(7). The duty to make reasonable efforts is not "a strict substantive requirement of termination," but the extent of the measures taken by the DHS "impacts the burden of proving those elements of termination which require reunification efforts." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). In considering the reasonableness of the nature and extent

of visitation offered by the DHS, the best interests of the children are controlling. *See In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996).

The State responds that Natasha failed to preserve error on this claim because she did not bring her dissatisfaction with services to the attention of the juvenile court. *See In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002) (holding if parent is not satisfied with DHS response to a request for other services, "the parent must come to the court and present this challenge"). We accept the State's preservation-of-error argument. But even if Natasha had informed the juvenile court of her request for additional visitation or expanded telephone contact with the children, the record does not show it would have made a difference in the termination decision. Natasha's visitation remained supervised because Natasha had not made enough progress toward the goals of the case plan. The DHS also supported the foster parents' decision not to allow the children to use cell phones to call Natasha without adult supervision. We find no merit in Natasha's insinuation that the foster family's actions hindered her chances for reunification.

## C. Significance of Parent-Child Bond

Finally, Natasha contends the termination would be detrimental to the three children due to the closeness of their relationship with her. *See* Iowa Code § 232.116(3)(c). The FSRP worker acknowledged the children have a bond with their mother and are initially happy to see her, but the worker also testified the children would ask how many minutes until they could leave the visitations. The social workers did not view the relationship with the children as so strong that termination of Natasha's parental rights would threaten their well-being.

The guardian ad litem for N.G., A.G., and J.G. told the juvenile court these children—sadly but realistically—had "stopped having the expectation that they are going to return home" or "that Mom is ever going to get it together, so she can provide a safe and stable home for them." At the time of the termination hearing, the DHS had identified a pre-adoptive home for them, but they had not yet been placed there.[3] The permissive factor identified in section 232.116(3)(c) does not tilt the scales away from termination in this case. *See In re D.W.,* 791 N.W.2d 703, 709 (Iowa 2010) (explaining that when analyzing this factor, courts must decide whether the children will be disadvantaged by termination, and whether the disadvantage trumps the parent's inability to provide for their needs).

**AFFIRMED.**

---

[3] The older child, D.I., did not wish to be adopted. The DHS worker testified D.I. did not have a "normal sibling relationship" with the younger children and instead acted as "more of a mother to her siblings." The worker believed that a separate placement might prevent D.I. from "carrying that burden her whole life."